which is 19-13 238 Spriggs versus the United States and take your time getting settled We have Ms. Wilson here for Mr. Spriggs and Ms. Hernandez here for the United States, correct? Correct. Good morning, Your Honor. Ms. Wilson, fire away whenever you're ready. Thank you, Your Honor. Without a warrant, police in this case unlawfully entered someone's home, a standalone dwelling on its own lot, connected to utilities, hooked up to a septic tank with its own street address in a residential neighborhood. So can I ask you a question just to kind of set the table? I actually think this would be like a really interesting question if it were here on like a straight suppression sort of motion where all we had to think about was the Fourth Amendment. But it's all being filtered through Strickland and so through this objective standard with respect to which this court has been very sort of generous in saying no competent lawyer could do what this lawyer did. And so I mean, don't you need to argue your issues sort of through that standard instead of just saying like this is about the, it is or isn't about the curtilage, it is or isn't about the automobile exception, something like that? Sure. I have a couple of answers to that. Okay. The first is I would encourage this court to look at the decision in Lee, which instructs that when a failure to, you know, failure to correctly advise your defendant changes his decision with respect to a plea calculus, that's enough to demonstrate prejudice under Strickland. And here you have an instance where even if he had decided to go to trial, his attorney would have refused to file this suppression motion anyway. And that really took away his constitutional right to a trial. The plea, it can hardly be said to be knowing and voluntary in this context because even as if he had gone to trial, she wouldn't have put forth this very, which as you admit is a very strong argument. So but what about performance? So the second answer to that is the case that has been cited often for this no competent attorney is Primo versus Moore. And that's a Justice Kennedy opinion which refers specifically to Kimmelman versus Morrison. In Primo versus Moore, the suppression motion that the Supreme Court was considering was completely futile. So that statement was made in the context of a completely futile suppression motion and it referred directly back to Kimmelman. It did not overrule Kimmelman and the Supreme Court has said many times that it does not overrule its own opinions sub silentio. I mean, I guess, you know, I've sort of swum in the waters that you're swimming in now and I remember this standard from an in bank decision of this court called Chandler that says, you know, that sort of embodies the no competent lawyer standard. So I guess, I guess I should ask, do you dispute that that's the standard for performance under Strickland? We do dispute that that's the standard, but we also think that even under that standard, we still win because these are very strong suppression motions.  I'm sorry. I didn't mean to interrupt. No, no, no. Go ahead. No, no, no. Please. You, we think the standard is meritorious or possibly meritorious and no court has ever said that it has to be a guaranteed slam dunk case that because often those motions don't exist. I mean, it's very rare that you're going to be faced with a motion that you can honestly say to a client, there's no chance this suppression motion is going to get denied. You know, if you look at the Oxford English Dictionary provides a legal definition of which means likely to succeed on the merits. Can I walk away? I'm sorry. Just to follow up on Judge Newsom's question, can I walk away from the standard embodied in Chandler? You're not. You may not agree with it. It may not have even been stated properly, but can I walk away from the standard we said and Bonk in Chandler when we talked about no competent lawyer could, is that not the standard that binds this three judge court? Your Honor, I believe that Chandler was a trial, was a case where it went to trial rather than to a plea. And I think that that could be a basis for departing from the standard in Chandler, especially if Chandler was decided prior to the Lee decision. Yeah, I think the procedurally, you're right that there is that difference. But boy, when you look at that language, it was pretty clear, pretty general and spoke about what Strickland meant in this circuit said Strickland meant no competent lawyer could, not no competent lawyer could in the context of a trial rather than a plea. Why would I draw a distinction between the two anyway? Even if I could limit it, even if I could limit the holding in Chandler to the procedural posture of a trial, why would I do so? You would do so based on the logical underpinnings of Lee, which say that if there's a reasonable probability that counsel's erroneous advice changed the plea calculus, then that's sufficient. I'm sorry, but I think that Judge Marcus is talking about the performance prong of Strickland and you keep answering with prejudice prong Strickland answers, I think. I understand and I do think that they somewhat overlap in this context because you can either look at her deficient performance as being the advice that she gave. And the magistrate found in our favor that the advice that she gave was completely erroneous and unreasonable, that no reasonable, no competent attorney would have found that the inevitable discovery exception applies. And from there, Mr. Spriggs decided not to, you know, he decided to waive his constitutional right to a trial. So that's how they relate because it was not as much about the motion itself and that's what Lee says and that's where it comes in. So I would ask the court to look at in the context of the deficient performance, that would be the erroneous advice she gave, which the court found to be erroneous. But I'd also be happy, you know, to discuss with this court why we think that even no competent attorney would have flat out refused to file this motion. So I guess let me just sort of put all my cards on the table and you can react to them. I mean, I guess the reason I think the performance prong is difficult for you here, one, it's an objective standard. So it's true, like the inevitable discovery thing was kind of a whiff. But there were like all these other sort of reasons that a reasonable, an objectively reasonable hypothetical lawyer might have made the same judgment, namely because like, I don't know, curtilage, kind of close. I don't know, automobile exception, kind of close. And then on the flip side, the lawyer might have concluded there are risks to making this motion. You know, like we've got case law that says if you make the motion, then you might not get the downward departure, right? So there, I don't know, there's this whole risk calculation that I wonder if we're in a good position to second guess. The risks were associated with his credibility and she wouldn't have even had to put him on the stand. The whole interaction was captured by the officer's body camera. Do you, I guess, separate and apart from the credibility, do you dispute that we've got case law saying that where a defendant files a motion to suppress, that might be reason to conclude that there is no acceptance of responsibility for purposes of a downward departure? I mean, I think we do. I think we have a- I don't think that that case law was cited by either the government or by the district court. So if you would like me to brief that issue, I'd be happy to, but I don't think, I haven't seen it come up in this case. We wouldn't agree that at least the third point is out there. I mean, the government could, let's assume the two are there, but the third, the government, the likelihood that the government in light of having to confront a motion to suppress chooses not to recommend the third point that one would tip, that might well be at issue in such a case. Sorry, sorry. If the government doesn't recommend the downward departure? The third point for acceptance of responsibility. Acceptance of responsibility. Yeah. Your Honor, I don't think that, I haven't seen any cases and I don't think the government has cited any cases where a defendant was punished for asserting his constitutional rights. And again, this motion would have been case dispositive because the curtilage exception doesn't apply. The curtilage has never, exception has never been understood to provide police with a roving warrant to search, you know, a neighboring lot if they've realized that there weren't referred to the wrong house. Similarly, the automobile exception has never been understood to apply to a motor home that's attached to utilities that has a septic tank and awning. Police don't even know if this could have been driven in its current state. It had sat for two months. One of the things that's kind of weird to me about this case, and I realize it's not sort of a perfectly inverse relationship, but the factors in this case that seem to favor a conclusion that perhaps this thing was within the curtilage, like the connection, the power pole connection or whatever, those are the very things that seem to undermine any argument that it was an automobile. So like, okay, so you couldn't drive away because you're attached to this house, but the fact that you're attached to this house suggests in a reasonable officer's estimation that maybe this is part of the curtilage. I don't think that the fact that, you know, sharing an internet, it had its own septic tank. And also, if you look at the property records at that's docket entry 15 in the district court, that each of the lots were separately subdivided. It was very clear that all the lots were the same size and that this was a separate lot. And, you know, temporary housing has existed as long as the Fourth Amendment has, you know, and the Fourth Amendment protected brick and timber frame just as much as it protected bark and sapling, which was a frequent form of temporary housing back then. So the fact that it may be with a lot of work could be moved, but the burden is on the government to prove that it meets the automobile exception. How much work did it actually take to move it? It wasn't on bricks. It was attached with the electrical wiring, but that's pretty easy. It takes about five minutes to unattach it. I'm not sure I understand that yet, Your Honor. So an RV, you know, that's going to sit somewhere for a long time. The owners might drain the oils. They might drain the coolant. So you don't have issues with that. There are creatures that can build nests in the air filter. You know, salt air can cause corrosion to engines. Tire pressure can be an issue. All of these are things that the government could have argued to meet its burden that the automobile exception applies, but they didn't make these arguments. Let me come at the questions again. Why could not a reasonably competent criminal lawyer, and after all, we have an attorney here who had been practicing her trade for 30 years. Why couldn't a reasonably competent attorney have said to herself, the question of cartilage was close. It was debatable. There were factors and circumstances cutting each way. After all, the RV was parked close to the single family home on the 11501 property, close enough to be connected, so close that the agent didn't second guess whether it was parked on a separate parcel. There was no fence that separated the two lots that might lead an observer to think the area where the RV was located was not associated with the single family home. Both the home and the RV were visible in the same eye sweep. When you looked at it, on the other hand, it was a separate lot, but the number was not there. There was only one number up there. Why couldn't a reasonably competent attorney come away from that and come away from the question about the automobile exception and say, you know, these are debatable questions, neither of them are slam dunks, and if I go forward and litigate these two items, I have to put people on the stand to do it, whether I put the defendant on the stand or family members on the stand or both. I'm going to be in a position where it may undermine their credibility, and I may need them for mitigation at sentence. Could not a reasonable, competent lawyer think about it that way? No, Your Honor. So I think that question was three-part. With respect to putting people on the stand, she didn't need to put anyone on the stand. She didn't need to put the defendant on the stand. She wouldn't have needed to put family members on the stand because anything they would have testified to was captured by a recording, which would be better evidence anyway through the officer's testimony. As to the automobile exception, in all of the motorhome cases cited by the government or by the magistrate, those were instances where the police had actually observed the motorhome moving. They knew there was evidence in the record that this could be driven and had very recently been driven, and simultaneously evidence in the record that— Can I ask you about that one? Is that the standard, that it has to be seen as having been moved, or is the standard that it could readily be moved without much effort? It's somewhere in between that, Your Honor. It's readily mobile is the standard, and the California v. Carney's case is very instructive on that because the Supreme Court there was persuaded by the fact that the motorhome was parked in a courthouse parking lot. Obviously, no one is living in a parking lot, especially in a courthouse parking lot. This is a completely different situation, and it's one that the automobile exception has never been extended to cover. To the extent that it hasn't come up much in the case law, that's because police usually get warrants for this. They knew they needed to go get a warrant because when they took the computer back, they got the magistrate to issue a warrant for the laptop specifically. Can I ask you a fact question in this regard? Yes. One of the things we look at, beyond whether it was mobile or stationary on a brick or elevation or not, was whether it was licensed to operate and subject to regulation, registration, and inspection. Do we have any evidence on that? The government has not put forth any evidence regarding whether it was licensed or not. No. Thank you. We've carried you way over, but you'll have your full rebuttal time. Thanks so much. All right, Ms. Hernandez, let's hear from you for the government. Good morning, your honors. May it please the court. Janae Hernandez for the United States. There's only one world in which Spriggs can prevail in this appeal. Because he's attacking the failure to file a motion to suppress, he must show that the motion was, in fact, a sure-fight winner. As the Supreme Court put it in primo, the relevant question is whether no competent attorney would think that a motion to suppress would have failed. In this case, the defendant hasn't shown that he had a sure-fire winner. After extensive proceedings below, filings of affidavits by defense witnesses, as well as testimony from the police officers, what we have here is a hotly contested issue that arrives at the intersection of various doctrines and extensive factual development. And at the conclusion of all of this, what we also have is a district court adopting a magistrate order that indicated that the government would have been very likely to win the suppression motion and resulted in the admission of the evidence, under the automobile exception, and acknowledged that it was a close call. Could I ask you a question right at the outset? And assume, for the purposes of my question, that I were to accept that these questions are debatable. That is to say, the automobile exception, the issue of cartilage, let's just assume that's fairly debatable among lawyers and judges of reason. Accepting all of that, what possible reason would there be for not perfecting the motion to suppress anyway? Why wouldn't you go forward and test it? What's the downside risk of pressing the motion before the district court? It certainly wasn't frivolous. It was, by all accounts, a serious and substantial claim. It was, after all, a warrantless entry into a home, albeit an RV. I want you to tell me how a competent attorney could conclude that there was risk involved in stepping down that path. Certainly, Your Honor. I'll answer it in two parts. There is the risk at the stage of the actual litigation of the motion to suppress, and then the risk at the end, in the prospect of sentencing. First, at the motion to suppress stage, the government roundly disagrees with the defense argument that they wouldn't have had to put family members on the stand. The recording, which is at docket entry 77, summarizes, or rather, it captures certain conversations between Detective Brodden, who was wearing the recording, and the defendant and his family members. But that interaction is very limited. It does not put forth many of the facts that the defense relies on today with respect to its RV argument. First of all, it has no reference to chalking. There's no reference to connected electrical wires, no statements denying entry into the automobile, no reference to a for sale sign, which the district court admitted was already the subject of debate between the testimony of the witnesses. It's clear from that that the recording would not have been enough for the defense to present all of the witnesses that make it a close call today after the fact. That's the risk. Putting on these witnesses, these family member witnesses, and subjecting them to grueling cross-examination, I think, would have potentially fleshed out some facts about their bias toward the defendant, which would have undermined their ability to present mitigation at sentencing. That's one issue. Separate and apart from that, there would be- Can I stop you on that? Can I stop you on that one for a moment? Did they put on any family members at the sentence? No, but the district court did have the affidavits from the family members that had been submitted as part of the previous 2255 motion. The court specifically made reference to those comments in its order. When it mentioned the chalking, when it mentioned the reference to the for sale sign, specifically made reference to some of the comments in Charlotte Roseman's affidavit. But, and even assuming that the court wasn't relying on that, that it was relying on Spriggs' own representations to that effect, let's say that the court allowed that hearsay, that would require the defendant himself to take the stand, which would have created an even bigger issue when it came to acceptance of responsibility, when it came to potentially an obstruction of justice enhancement, and that drives into the second point, which is the calculus at sentencing, separate and apart from the question of whether the government would have given that additional point, that would be the least of the defendant's problems at that point, because there he would be opening himself up to the possibility of an obstruction of justice enhancement and denial of the two points of acceptance of responsibility that's within the court's power to apply. So, and it's also important to consider the testimony, which was found credible, of Ms. Rosen-Evans, where she indicated that at the level that the defendant, you know, in the waters that the defendant was wading, right, it made a huge difference. Those four to five points made a huge difference when it came to his guidelines calculation. We're talking about- Would he have lost, to follow up on a question Judge Story asked earlier, would he have lost acceptance of responsibility credit for sentencing calculus if he had perfected his motion to suppress? He lost. He preserved the issue with the agreement of both sides to perfect that on appeal and took what amounted to a conditional plea. Would he have lost acceptance of responsibility under those terms? I think the relevant question is, is there a risk that he would have lost? Because that's really the world that defense counsel was operating in below. But then tell me what risk there was. If he perfected his motion to suppress, he lost his motion to suppress, and he went on to plead guilty, seeking a conditional plea. You might not agree to that. I suppose that's one risk. But if you did, why would the district court hold it against him that he perfected the suppression motion under the Fourth Amendment and lost? I think given the factual circumstances of this case, there was certainly a risk that the district court would have denied acceptance of responsibility based on putting on certain testimony from witnesses and potentially taking the stand to testify about facts that only he knew about. For example, the conversations that were not recorded with the detectives in this case. So the district court could have easily taken a look at the presentation of that information, of those facts or those allegations, and concluded that the defendant was really just trying to have his cake and eat it too. Trying to deny responsibility and also get acceptance of responsibility, get that benefit. Thank you. I'm sorry, Judge Marcus. I didn't mean to step on you. Are you finished? No, no. Thank you very much. You've answered my question. So this is just to the same point. And I just want to put it out there. And if maybe someone at counsel table could write down these citations, and I'd be happy for each side to file supplemental briefs on this little tiny point. I've just got three citations that I think anyway stand for the proposition, at least in cases where we have affirmed rejection of acceptance of responsibility reductions on the ground that the defendant filed a motion to suppress. And I'd be interested in hearing from both of you. We can say, what's today? Wednesday. We can say by next Monday or something. Five page maximum supplemental briefs. And the citations are United States versus Knight, which is 562 F3rd 1314. United States versus Sporke, S-P-O-E-R-K-E, 568 F3rd 1236. And United States versus Gonzalez, which is 70 F3rd 1236. Ms. Wilson, you should feel free to tell me that I've just read them wrong. But I think that's what those cases say. And it seems to me that those cases would seem to bear on the calculation of an objectively reasonable attorney in deciding whether or not to make a motion that may in any event be iffy. That was sort of the point of me raising those cases earlier. And I didn't, Ms. Wilson, want to leave you without the opportunity to address them since I had sort of sprung them on you. So I wanted to dig out the citations and just give them to you so you could comment. Absolutely, Your Honor. I mean, I agree with that as an independent basis that would have certainly affected a reasonably competent attorney's calculus. And might I add the following. Separate and apart from that- So let me just stop you on that. Let me stop you on that point. Do you read the law in this circuit to be that if you perfect a motion to suppress a district court would be free just for that reason alone to deny you acceptance of responsibility? No, Your Honor. No, that's not my point. The point that I'm trying to make based on the circumstances of this case is that given the hotly contested factual nature and the fact that you would likely have witnesses at loggerheads with respect to facts that the district court would have to determine to reach a conclusion, there is a very real risk that these witnesses would be found not credible. And that would directly bear on acceptance of responsibility and obstruction of justice, which could lead to a five-level enhancement in the defendant's guidelines. But separate and apart from that, there is the fact that the defendant, as part of his letter to the court, where he himself characterized his interactions with the detectives as being completely voluntary and part of his road to redemption and his overwhelming acceptance of responsibility. He's redeeming himself. He knew that he had done something wrong and wanted to do everything possible to cooperate with the United States. If nothing else, that argument would have been completely undermined by a motion to suppress. That letter to the district court below would have seemed pretty self-evidently talking out of both sides of his mouth. And when we're talking about the more flexible factors under 3553A, that is something that at the very least in denying a downward variance, which the defendant did manage to get twice. You see, I think that you are right, that if the defendant were put on the stand, the risks jumped right through the net. But couldn't they have perfected their motion to suppress awfully enough by putting on and whatever there was in the way of the recordings and what the government's witnesses had to say? Was it essential that the defendant had to take the witness stand at a suppression motion to argue this warrantless search was unlawful and the proceeds had to be suppressed? I think there were two ways to go about it. If they wanted to present all of the facts that would have made this motion a close call, certainly putting on the defendant would have been the way to do it. The defendant and the family members would have been necessary to fully flesh out all of the facts that they bring to the court today. And the reason why I say the defendant would have been included there is because there were conversations where, initiated by the defendant by the way, that he had with where he specifically led them to the side because he didn't want his family members to hear what they were talking about. And that would have directly related it to the argument that somehow they made a show of authority, they represented to him that they already had the right to go into his computer, et cetera, et cetera. Those facts would have been fleshed out by that conversation. Now, second best to that would have been to put on the family members. And that would not have been a safe proposition in and of itself. It may have been less likely that he would have been hit with an obstruction, perhaps, but putting on witnesses that are then considered not credible, that also did open him up to an obstruction of justice enhancement. It may have been slightly less likely than him proffering the lies himself, but it's still not a riskless proposition. And just when determining the reasonableness of plea counsel's decisions, it's not just a matter of, can I get away with not putting these witnesses on the stand? It's also, even if I can and hope that the facts that I can flesh out are sufficient in and of themselves to prevail or give me the best chance of prevailing, are there attendant consequences to that in and of itself? For example, not allowing, not, you know, letting my client put on a mitigation letter where he says that he was, you know, freely cooperative from the get-go. All of these things are perfectly reasonable within the calculus of competent counsel. And I see my time is up. So if there are no more questions, I would urge the court to affirm. Thank you. Thank you so much, Ms. Hernandez. And Ms. Wilson, you've got the full five. Thank you, Your Honor. So undisputed testimony, I don't understand how that could possibly undermine Mr. Spriggs' credibility. There would have been no need to put him on the stand because all of the relevant testimony to the motion to suppress was on the body camera recording. You wouldn't have needed to introduce any other separate conversations. Any consent that they claim that he gave would not have been voluntary if made after the false statement of authority. And you wouldn't have even needed to introduce that based on what was under the recording. The right to trial and the right to plea, to waive the trial through a plea agreement are fundamental and they're personal. And Mr. Spriggs would not have pled guilty in this case if the attorney had competently advised him that this, even that the suppression motion had cut both ways. Even if she had said, as Justice Marcus pointed out, or Judge Marcus pointed out in his hypothetical that, you know, we could win, we could lose. If you lose, it's risky and a trial will be worse than a plea. He still would have pleaded guilty. She said, no, this is hopeless. I'm refusing to file it. Take it up on a 2255. The recording, you know, was meant that no family was needed and that he was not needed to testify. So I'm a little confused. I'm sort of curious about something. Does the trial lawyer have the ability tactically to refuse to accept the client's desire to proceed with a suppression hearing? We're not talking about a trial now. Client says, I want to go forward to suppression hearing. Lawyer says, bad mistake. Here's why. Blah, blah, blah. Client says, I understand that. I want to go forward. We're not talking now about a client insisting on the right to take the witness stand at a trial or the right to go forward with the trial itself. But can a lawyer tactically say, this decision belongs to me? And I'm not going to perfect the suppression hearing because my calculation is the risk is too great. The gain is much, much too small. If you want to do it, get yourself another lawyer. I will not do that. Can a lawyer do that? Yes, Your Honor, you're correct that this case does lie at the intersection of the general principle that trial attorneys get to decide what motions to file and to make strategic decisions. But on the other side of that scale is the constitutional right to a trial and the defendant's right to waive that trial through a plea agreement. So here, it's the fact that it deeply affected his right to plea and it took away his constitutional right to a trial because he was inadequately advised. Second of all, the strategic reasoning that she put forth and that the government argues here is objectively unreasonable. No competent attorney would tank a very strong, very likely to succeed, and we argue completely sort of successful motion, Fourth Amendment suppression motion, when the defendant didn't even need to testify and when the family members didn't even need to testify. She could have submitted the motion and gone solely based off the police officers. And that, to say, I'm not going to call you to testify, but I'm going to argue this motion and only deal with the police officer, that would have been a perfectly reasonable strategic decision. But we had a whole evidentiary hearing in the district court and before the magistrate, and his testimony was undisputed. There were no credibility issues, so to suggest that his credibility possibly could have been undermined by this suppression motion when the record proves otherwise makes no sense. Wouldn't you agree there's much less risk through the family members testifying than has been suggested? And the reason I say that is if they were testifying on the grounds of suppression that have been argued, that is the automobile exception and the curtilage, they could testify about the nature of what the motor, the RV was, how it was set up. They could testify about the layout of the land, the power lines, everything else. It has nothing to do with what his thoughts were or in any way incriminating him, but there were just facts that they could offer that if ultimately they lost, they would not be found to have obstructed justice. They are the facts, as you said, that are basically undisputed. So was there really that high a risk for the family members to testify on the grounds that are being argued here? No, there wasn't. There would have been no risk associated with the family members testifying as to the licensing of the RV, whether or not it could be driven, how long it could be parked, how long it would, as Judge Marcus asked, how long it would take to get up and running again. In the United States, can I finish my sentence? In United States versus Watts, the 11th circuit case that the magistrate relied on for the automobile exception, that was a Mustang where they could just get in the car and go. Testimony from the family members could have contradicted that, absolutely. All right, very well. Thank you very much, Ms. Wilson. Ms. Hernandez, well argued on both sides.